UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:05CV-836-R

LOCAL UNION 369, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO                                                                                    PLAINTIFF

v.

THE COURIER-JOURNAL, INC.                                                                 DEFENDANT

## MEMORANDUM OPINION

Defendant has filed a motion to dismiss (Dkt. # 4). Plaintiff responded (Dkt. # 5), Defendant replied (Dkt. # 8), and this matter is now ripe for decision. For the reasons given below, Defendant's motion is **DENIED**.

## BACKGROUND

Plaintiff Local Union 369, International Brotherhood of Electrical Workers, AFL-CIO ("Union") represents a unit of electricians working in the maintenance department of The Courier-Journal, Inc. ("Courier-Journal" or "Company"). The Union and the Courier-Journal have executed a series of collective bargaining agreements (CBAs), including the most recent one in March of 2003, to govern the relationship between the company and its employees in the maintenance department. The present dispute concerns Defendant's decision, in September of 2004, to "allow[] a bargaining unit employee to continue to work without satisfying financial core obligations..." which the Union argues is in violation of the CBA. Specifically, the Union seeks to have the Court read into the currently-effective CBA a "Union Security Provision" which conditions employment on either (a) membership in and payment of dues to the Union, or

1

(b) non-membership with payment of an equivalent amount.[1]  Defendants have moved to dismiss the case on grounds that no viable theory supports such a contract interpretation.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002).  A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## ANALYSIS

A brief summary of the parties' past agreements is necessary for an understanding of the interpretation of the current CBA urged by the Union.  The Company's maintenance department "consists of machinists and electricians who bargain jointly with the [C]ompany;" the machinists

---

[1] Over the years, the union security provisions have varied between the electricians and machinists, and have changed over time as well, but the main import has been to more or less require union membership as a condition of employment.

are represented by another union, the International Association of Machinists and Aerospace Workers. (Plaintiff's Response, Dkt. # 5, at 2-3). According to the Union, "longstanding practice of the parties has been to sign (a) a joint maintenance agreement, covering both [electricians and machinists]; and (b) a supplemental 'Agreement' with provisions specific to the [electricians]." *Id.* It appears from Plaintiff's exhibits that a "Supplemental Agreement" was also executed for the machinists in 1995 (Attachment 6 to Dkt. # 5); it is unclear whether Supplemental Agreements for machinists were also executed in other years. In any case, the Supplemental Agreements contained the union security provisions that obligated the Company to impose certain requirements relative to union membership on employees it hired to work as electricians/machinists in its maintenance department.

With regard to the joint maintenance agreement (entitled "Joint Maintenance Labor Management Agreement"), which both parties refer to as the CBA, no union security provision is contained therein, nor was such a provision contained in the 1995 or 1998 versions before the Court. The 1998 CBA expired in July of 2001, and the parties negotiated the current CBA, which was signed in 2003 and expires February 27, 2003. On March 5, 2003, the representatives of both Unions sent a letter to the Company notifying it that the agreement had been ratified and stating that: "It is all understood that provisions of the just past Labor Agreement that was [*sic*] not specifically changed or modified during our negotiations will remain in the new agreement." (Exhibit J to Dkt. # 5). The parties agree that no mention was made of the union security provision during the negotiation of the 2003 CBA, and that the Company drafted the agreement at the end of negotiations. The Union argues that this combination of events requires that a union security provision be read into the 2003 CBA as part of the parties' understanding.

3

There is no evidence introduced by either party to indicate that Supplemental Agreements equivalent to those which expired in July of 2001 were ever negotiated as part of the 2002-2003 CBA negotiations. Although it does not explicitly say so, the Union appears to consider these Supplemental Agreements part and parcel of the CBA; otherwise, it could not argue that provisions appearing only in those documents were inadvertently "left out" of the 2003 CBA. However, the 1995 and 1998 CBAs make no mention of the Supplemental Agreements; indeed, the Supplemental Agreements *themselves* incorporate by reference the CBAs, not vice versa.

As an initial matter, the Court notes that the Union resists the instant motion to dismiss on grounds that it requires consideration of matters outside the pleadings. Defendant correctly argues that where the Complaint relies on certain documents, a court's consideration of those documents does not require conversion of the motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 56. *Greenburg v. The Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (*quoting* 11 James Wm. Moore, et al., Moore's Federal Practice § 56.30[4] (3d ed. 1998); *citing Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). The agreements and correspondence between the parties are centrally relied upon by the Union in its complaint, and the Court's examination of them does not require conversion of the instant motion to a summary judgment motion.

Substantively, the Union essentially seeks to introduce extrinsic evidence of the parties' intent with respect to the union security provisions, suggesting that the 2003 CBA ultimately did not contain a union security provision because one of the following three things occurred: "The Defendant inadvertently omitted the security clause in reducing the agreement to writing [...]; The Defendant was somehow mistaken in the belief that the parties had agreed to deletion of the

4

security clause [...]; [or] [t]he Defendant intentionally changed the contract in a way it knew had not been agreed to." (Dkt. # 5, at 6).  The Court notes that the rules for interpreting collective bargaining agreements are not necessarily the same as those for interpreting an ordinary commercial contract.  As the Union notes, the Supreme Court has said: "In our role of developing a meaningful body of law to govern the interpretation and enforcement of collective bargaining agreements, we think special heed should be given to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

Accepting all the allegations of the Complaint as true and construing it liberally in the Union's favor, and taking into account the parties' apparent continuing inclusion of the union security clauses in past agreement, the Court finds that the Defendants have not established beyond a doubt that the Union can prove no set of facts that would entitle it to relief.  A more thorough examination of the history of the negotiations between the parties is necessary for the Court to determine the parties' intent with respect to the security provisions.  It may ultimately be that, after some discovery, it will become clear that the Union cannot demonstrate that the parties intended to include the security provision in the agreement; however, in light of the standard of review and the relative lack of evidence available at this stage of the proceedings, the Court finds that the motion to dismiss must be denied.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **DENIED**. An appropriate order shall issue.