UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:05CV-836-R

LOCAL 369 INTERNATIONAL BROTHERHOOD                                    PLAINTIFF
OF ELECTRICAL WORKERS

v.

COURIER-JOURNAL                                                          DEFENDANT


## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (Docket #34).

Plaintiff has filed a response (Docket #38) to which Defendant has replied (Docket #39). Plaintiff

has also filed a Motion for Partial Summary Judgment (Docket #35). Defendant has filed a response

(Docket #37) to which Plaintiff has replied (Docket #40). These matters are now ripe for

adjudication. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED

and Plaintiff's Motion for Partial Summary Judgment is DENIED.

## BACKGROUND

Plaintiff Local Union 369, International Brotherhood of Electrical Workers, AFL-CIO

("Union") represents a unit of electricians working in the maintenance department of The Courier-

Journal, Inc. ("Courier-Journal"). The Union and the Courier-Journal have executed a series of

collective bargaining agreements ("CBAs") to govern the relationship between the company and its

employees in the maintenance department. On March 5, 2003, Plaintiff and Defendant signed the

most recent collective bargaining agreement, which is at issue in this case, entitled "Joint

Maintenance Labor Management Agreement" ("JMLMA"). The present dispute concerns

Defendant's decision, in September of 2004, to "allow[] a bargaining unit employee to continue to

work without satisfying financial core obligations . . ." which the Union argues is in violation of the

JMLMA.

The Union seeks to have the Court adjudicate that the JMLMA contains a union security

clause which existed through many years and contract between the parties, but which was omitted

from the JMLMA.  The Union asserts that the union security clause, which conditions employment

on either (a) membership in and payment of dues to the Union, or (b) non-membership with payment

of an equivalent amount, was omitted by mistake of the Courier-Journal.[1]

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish

that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law."  In determining whether summary judgment is appropriate,

a court must resolve all ambiguities and draw all reasonable inferences against the moving party.

*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."

*Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party

bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v.*

*Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of

evidence in support of his position; the plaintiff must present evidence on which the trier of fact

could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1]  Over the years, the union security provisions have varied between the electricians and machinists, and have changed over time as well, but the main import has been to more or less require union membership as a condition of employment.

251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

The Union brings this action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185, which provides a cause of action for breach of a labor contract. Section 301 does not contain any express statute of limitations. When confronted with a federal cause of action that lacks an express statutory limitations period, courts typically borrow an appropriate statute of limitations from someplace else. *Cummings v. John Morrell & Co.*, 36 F.3d 499, 502 (6th Cir. 1994). The Courier-Journal argues that this Court should apply the six-month statute of limitations applicable in unfair labor practices under section 10(b) of the National Labor Relations Act ("NLRA") as the Union's claim bears a "strong family resemblance" to an unfair labor practices charge. Hence, the Courier-Journal states that the action is time-barred, asserting that the action accrued no later than September 9, 2004. The Union, however, argues that the applicable limitations period is Kentucky's fifteen-year limitation period for breach of contract claims pursuant to KRS 413.090, as the claims in this action are purely contractual in nature.

"Historically . . . when Congress declines to provide a limitations period for a federal cause of action, the courts apply limitations periods from state law." *Cummings*, 36 F.3d at 502 (citing *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703-04 (1966)). A rule from federal law should only be borrowed where it "clearly provides a closer analogy than available state statutes, and when the

federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Delcostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983).  Each of these three elements must be satisfied for the court to depart from the "norm" of borrowing a state limitations period.  *Cummings*, 36 F.3d at 506.

## I.    ANALOGY

The Courier-Journal argues that by filing an earlier NLRB charge on the exact same allegations, the Union has effectively admitted that its lawsuit bears a strong resemblance to an unfair labor practices case.  The Union argues that the NLRB charge alleged a violation of Section 8(a)(5) of the NLRA, a breach of the duty to bargain in good faith, by unilaterally imposing a change in the agreement of the parties and not breach of contract, the claim asserted here.[2]

The Courier-Journal cites to *Cummings v. John Morrell & Co.* in support of its assertion that the limitations period of Section 10(b) is applicable to the instant case.  In *Cummings*, a union filed a Section 301 lawsuit against an employer based on the same allegations on which it had filed an earlier NLRB charge.  *Id.* at 501.  The Sixth Circuit upheld the district court's decision applying the six-month statute of limitations of Section 10(b) over the union's objection that the state limitations period for breach of contract should apply.  *Id.* at 506.  The Sixth Circuit found that the union's claim bore a strong family resemblance to an unfair labor practice charge, stating that the union's

---

[2] The NLRB charge was filed on June 10, 2005.  Counsel for the Union states that in early August of 2005, after an initial investigation of the matter, the assigned NLRB agent contacted counsel for the Union and stated that the Regional Director had decided not to issue a complaint on the charge.  The NLRB agent stated that an opportunity was being provided to withdraw the charge, otherwise the Regional Director would issue a written statement of his decision not to issue a complaint.  The NLRB agent stated that the reason a complaint would not be issued was that the matter did not appear to implicate an unfair labor practice, but rather was a contractual dispute between the parties.  The Union subsequently withdrew the charge voluntarily.

own conduct supported this observation, as the union had filed an unfair labor practice complaint with the NLRB based on the same allegations. *Id.* The Sixth Circuit found it of slight significance to its analysis that the union did not prevail on the NLRB charge. *Id.*

The *Cummings* court stated that the landmark case on the issue was *Central States Southeast & Southwest Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098 (6th Cir. 1986) (en banc). *Cummings*, 36 F.3d at 505. In *Kraftco*, a union-sponsored pension fund sued an employer under Section 301 claiming that the employer had broken a collective bargaining agreement by failing to make required payments into a pension fund. *Kraftco*, 799 F.2d at 1100. In determining whether a state or federal statute of limitations was most closely analogous, the court found it necessary to characterize the plaintiff's claim by examining the elements of the cause of action established by Congress. *Id.* at 1105.

Section 8(a)(5) of the NLRA provides, "It shall be an unfair labor practice for an employer . . . to refuse to bargain collectively with the representatives of his employees . . ." The duty "to bargain collectively" is defined by Section 8(d) of the NLRA as the duty to "meet . . . and confer in good faith with respect to wages, hours, and other terms and conditions of employment." A refusal to negotiate in fact as to any subject which is within the ambits of Section 8(d) and about which the union seeks to negotiate violates Section 8(a)(5) "though the employer has every desire to reach agreement with the union upon an over-all collective agreement and earnestly and in all good faith bargains to that end." *NLRB v. Katz*, 369 U.S. 736, 743 (1962). "[A]n employer's unilateral change in conditions of employment under negotiation is similarly a violation of § 8(a)(5), for it is a circumvention of the duty to negotiate which frustrates the objectives of § 8(a)(5) much as does a flat refusal." *Id.* As stated by the Union in its Memorandum in Support of its Motion for

5

Partial Summary Judgment, a union security provision is a "mandatory" subject of bargaining within the ambits of Section 8(d), *Pleasantview Nursing Home, Inc. v. NLRB*, 351 F.3d 747, 759 (6th Cir. 2003), such that an employer's unilateral change in that area is an unfair labor practice prohibited by the NLRA, *Katz*, 369 U.S. at 743.

Here, the Union claims that the Courier-Journal "was required by law to negotiate before unilaterally dishonoring the union security clause." The Union states that the parties agreed that the provision concerning the union security clause would remain in force, but when the Courier-Journal drew up the JMLMA, it omitted the provision from the agreement. The Court finds this argument analogous to an unfair labor practices charge.

## II.    FEDERAL POLICIES AT STAKE

"A cardinal goal of federal labor law is the protection and promotion of 'consensual processes' of labor-management interaction. *Cummings*, 36 F.3d at 506. Federal law favors collective bargaining as the means by which workers and employers define the terms of their relationship. *Id.* Federal policy favors the swift resolution of claims touching on the integrity of collective bargaining. *Id.* Federal policy also supports upholding valid union security provisions "to remedy the inequities posed by 'free riders' who would otherwise unfairly profit from the Taft-Hartley Act's abolition of the closed shop." *Communications Workers of Am. v. Beck*, 487 U.S. 735, 753-54 (1988).

In *Cummings*, the union's claim rested, in large part, on the conduct of collective bargaining between the parties. *Cummings*, 36 F.3d at 506. The union and employer began negotiations over a modification to an existing agreement. *Id.* The union alleged that the employer's conduct throughout these negotiations was part of a fraudulent plan culminating in the closure of certain

plants and in the subsequent negotiation of a new collective bargaining agreement excluding those facilities from coverage. *Id.* The union stated that the employer's prevarications about its intent in closing these plants led the union to agree to the exclusion of the factories from the new contract. *Id.* The Sixth Circuit found that such an attack on the integrity of the bargaining process was required by federal labor policy to be resolved quickly, much as charges of unfair labor practices are, and that Section 10(b) was an appropriate vehicle to serve this interest. *Id.* at 506-07.

Here the Union's lawsuit primarily concerns the collective bargaining process, not the meaning of contractual terms. As in *Cummings*, much of the proof of the Union's claim would involve evidence of the employer's statements and conduct during the collective bargaining process as is evidenced by the Union's citation to Michael Przybylek's deposition testimony concerning the negotiations.[3] *Id.* at 506. Like the court in *Cummings*, this Court finds that the federal policies at stake favor the application of the limitations period of Section 10(b) of the NLRA.

## III.    PRACTICALITIES OF LITIGATION

In *DelCostello*, the Supreme Court warned about the dangers of recruiting unsophisticated workers to gather information about an event and file a lawsuit within a narrow time frame. 462 U.S. at 165-66. Here, however, the claim is brought by a sophisticated party that is an experienced litigator. The Court finds that no unfairness results by imposing a six-month limitation on the instant claim. *See Cummings*, 36 F.3d at 507.

Therefore, this Court finds that the six-month statute of limitations period of Section 10(b) of the NLRA is applicable to the present action.

---

[3] Michael Przybylek was the Courier-Journal's vice president for production until his retirement in April of 2006. Przybylek was the Courier-Journal's lead negotiator through most of the bargaining leading to the JMLMA.

## IV.     ACCRUAL OF ACTION

The sixth-month period began to run when the Union "discovere[d], or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994) (quotations omitted).  The Union admits that it learned the Courier-Journal was allowing Wright to work without paying union dues on September 9, 2004.  The Union was required to file suit no later than March 9, 2004.  The Union did not file this action until December 30, 2005.  Thus, this action is time-barred.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.

An appropriate order shall issue.